UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

| | |
|---|---|
| SUSAN FINGER, | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| TREMONT MORTGAGE TRUST, MATTHEW P. JORDAN, WILLIAM A. LAMKIN, JOHN L. HARRINGTON, JOSEPH L. MOREA, and ADAM D. PORTNOY, | : |
| Defendants. | : |

Case No._____

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

------------------------------------------------------------

Plaintiff Susan Finger ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.        This action is brought by Plaintiff against Tremont Mortgage Trust ("Tremont" or the "Company") and the members of Tremont's Board of Trustees (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Tremont will merge with RMR Mortgage Trust ("RMRM") (the "Proposed Transaction").

2.      On April 26, 2021, Tremont and RMRM issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated April 26, 2021 (the "Merger Agreement").  Under the terms of the Merger Agreement, Tremont shareholders will each receive 0.52 of one newly issued common share of RMRM for each Tremont share they own (the "Merger Consideration").  Following completion of the merger, former Tremont shareholders are expected to collectively own approximately 30%, and RMRM's shareholders are expected to own approximately 70% of the combined company.

3.      On July 26, 2021, RMRM filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Tremont stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's, RMRM's and the pro forma company's financial projections relied upon by the special committee of the Board's ("Special Committee") financial advisor, Citigroup Global Markets, Inc. ("Citi") in connection with its fairness opinion; (ii) the data and inputs underlying the financial valuation analyses performed by Citi; and (iii) the background of the Proposed Transaction.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Tremont stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4.      In short, unless remedied, Tremont's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, Tremont's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Tremont.

9.      Defendant Tremont is a Maryland real estate investment trust ("REIT"), with its principal executive offices located at Two Newton Place, 255 Washington Street, Suite 300, Newton, Massachusetts 02458.  Tremont is a real estate finance company that originates and invests in first mortgage loans secured by middle market and transitional commercial real estate. The Company's day-to-day business is conducted by Tremont Realty Advisors LLC ("TRA"). Tremont's shares trade on the Nasdaq Global Select Market under the ticker symbol "TRMT."

10.     Defendant Matthew P. Jordan ("Jordan") has been a Managing Trustee of the Company since 2021.  Defendant Jordan also serves on the board of RMRM and as Executive Vice President, Chief Financial Officer ("CFO") and Treasurer of The RMR Group Inc. ("RMR Inc.") and The RMR Group LLC ("RMR LLC").  Defendant Jordan has been a director and the President and Chief Executive Officer ("CEO") of TRA since January 2021.

11.     Defendant William A. Lamkin ("Lamkin") has been an Independent Trustee of the Company since 2020.  Defendant Lamkin also serves on the boards of two RMRM managed public companies.

12.     Defendant John L. Harrington ("Harrington") has been an Independent Trustee of the Company since 2017.  Defendant Harrington also serves on the board of RMRM and three additional RMR managed public companies.

13.     Defendant Joseph L. Morea ("Morea") has been an Independent Trustee of the Company since 2017.  Defendant Morea also serves on the boards of two RMRM managed public companies.

14.     Defendant Adam D. Portnoy ("Portnoy") has been a Managing Trustee of the Company since 2017.  Defendant Portnoy also serves on the board of RMRM, has been President and CEO of RMR Inc. since shortly after its formation in 2015, President and CEO of RMR LLC since 2005, and was a director of RMR LLC from 2006 until June 5, 2015.  Defendant Portnoy has also been a director of TRA since March 2016, and served as its President and CEO from March 2016 through December 2017.

15.     Defendants identified in paragraphs 10-14 are referred to herein as the "Board" or the "Individual Defendants."

### OTHER RELEVANT ENTITIES

16.     RMRM is a statutory trust organized under Maryland law with its principal executive offices located at Two Newton Place, 255 Washington Street, Suite 300, Newton, Massachusetts 02458. RMRM's business strategy is focused on originating and investing in first mortgage loans secured by middle market and transitional commercial real estate ("CRE"). RMRM defines middle market CRE as commercial properties that have values of up to $100.0 million, and defines transitional CRE as commercial properties subject to redevelopment or repositioning activities that are expected to increase the value of the properties. RMRM is managed by TRA and has no employees. Services that would otherwise be provided to RMRM by employees are provided by TRA, RMRM's manager, and by RMRM's managing trustees and officers. RMRM's common stock trades on the Nasdaq Global Select Market under the ticker symbol "RMRM."

17.     TRA is a Maryland limited liability company that provides management services to each of Tremont and RMRM.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

18.     Tremont is a REIT organized under Maryland law that has qualified to be taxed as a real estate investment trust under the Internal Revenue Code of 1986. Tremont's business strategy is focused on originating and investing in first mortgage loans secured by middle market and transitional CRE. Tremont defines middle market CRE as commercial properties that have values of up to $100.0 million, and defines transitional CRE as commercial properties subject to redevelopment or repositioning activities that are expected to increase the value of the properties. Tremont has no employees. Services that would otherwise be provided to Tremont by employees are provided by TRA, Tremont's manager, and by Tremont's managing trustees and officers.

19.     As of March 31, 2021, Tremont had a portfolio of 13 performing loans with aggregate total commitments of approximately $268.4 million and a repurchase facility with Citibank, N.A., or Tremont's Master Repurchase Facility, with a current maximum facility size of approximately $213.0 million.   As of March 31, 2021, Tremont's aggregate total loan commitments had a weighted average maximum maturity of 2.4 years, weighted average coupon rate of 5.73% and 6.43% all-in yield.   As of March 31, 2021, the properties securing Tremont's aggregate total loan commitments (based on book value of loans held for investment) were located in four geographic regions, of which 40% were located in the South, 32% were located in the East, 4% were located in the West and 24% were located in the Midwest.   As of March 31, 2021, the properties securing TRMT's aggregate total commitments (based on book value of loans held for investment) were 19% industrial properties, 17% retail properties, 9% hotel properties, 37% office properties and 18% multi-family properties.

20.     On April 15, 2021, Tremont declared a quarterly distribution of $0.10 per common share, or approximately $0.8 million, to shareholders of record as of April 26, 2021.  The Company expects to pay this distribution on or about May 20, 2021.

21.     On April 27, 2021, the Company announced its first quarter 2021 financial results. Distributable earnings for the quarter were $2.25 million, compared to $1.71 million for the first quarter in the prior year.   Distributable earnings per share were $0.27, up from $0.21 for the corresponding period of 2020.   Net income from investments was $3.35 million, compared to $2.53 million in the first quarter of 2020.   Book value per share reached $10.90, a 4.4% improvement from book value per share of $10.44 in the same period of the prior year.   Reflecting on the Company's results, Tremont President Tom Lorenzini stated:

> Our first quarter results underscore the strength of TRMT's commercial mortgage
> portfolio, with all of our loans remaining current on debt service and our portfolio

risk rating continuing to improve. We received one early repayment during the quarter and used the proceeds to pay down our master repurchase facility. We intend to reinvest the capital and remain active in the market evaluating prospective opportunities. In the meantime, based on the health of our portfolio and our strong operating results, we were pleased to have reinstated a regular quarterly distribution to our shareholders.

**The Proposed Transaction**

22.     On April 26, 2021, Tremont and RMRM issued a joint press release announcing

the Proposed Transaction, which states, in relevant part:

NEWTON, Mass.--RMR Mortgage Trust (Nasdaq: RMRM) and Tremont Mortgage Trust (Nasdaq: TRMT) today announced that they have entered into a definitive merger agreement pursuant to which TRMT will merge with and into RMRM, with RMRM continuing as the surviving company. The merger is expected to create a more diversified commercial mortgage real estate investment trust, or REIT, focused on middle market transitional bridge loans with assets expected to approach $1 billion when fully invested. The merger is expected to be accretive to distributable earnings in 2022 with the potential to realize annual expense savings of $1.4 million to $1.6 million, or $0.10 to $0.11 per common share, due to the elimination of certain duplicative public company costs.

Tom Lorenzini, President of RMRM and TRMT, made the following statement:

"We are excited to announce this merger of two highly complementary businesses that will create a larger, more diversified commercial mortgage REIT. This combination greatly enhances our financial strength and provides attractive benefits to the shareholders of both companies. We believe that with increased scale and an expanded capital base the combined company will be much better positioned to access capital markets, increase operating efficiency, and deliver more attractive risk-adjusted returns for our shareholders."

Certain Expected Strategic Transaction Benefits

- Enhanced scale with fully invested assets expected to approach $1 billion
- Accretive to the distributable earnings of both RMRM and TRMT
- Expanded capital base, float and shareholder liquidity
- Improved access to capital markets with the potential of a reduced cost of capital
- Increased portfolio diversification among investments and asset class exposure
- Greater market visibility to drive increased transaction volume
- Seamless integration, as existing senior management team remains in place

Under the terms of the merger agreement, each TRMT common share will be converted into 0.520 of one newly issued RMRM common share. Based on the closing prices of RMRM's and TRMT's common shares on Friday, April 23, 2021, the implied offer price is approximately $6.55 per TRMT common share, which represents a premium of 6% and 9% to the closing price and the volume weighted average price, respectively, for the 30 trading days ending on April 23, 2021. Upon the closing of the merger, RMRM shareholders are expected to own approximately 70% of the combined company's outstanding common shares, while TRMT shareholders are expected to own approximately 30% of the combined company's outstanding common shares.

Based on the closing price of RMRM's common shares on April 23, 2021, the equity market capitalization of the combined company would be approximately $180 million. Tremont Realty Advisors LLC, the manager of RMRM and TRMT, or the Manager, will continue to manage the combined company and has waived any termination fee that would otherwise be payable by TRMT as a result of the merger.

On a pro forma basis as of today, the combined company will have a loan portfolio consisting of the following characteristics:

- 22 first mortgage loans with aggregate loan commitments of $519 million;
- Average funded loan size of $21 million;
- Weighted average maximum maturity, which assumes all borrower extension options have been exercised, of 3.2 years; and
- Weighted average interest rate of LIBOR plus 3.91% and a weighted average loan-to-value of 66%.

The merger and other transactions contemplated by the merger agreement and the terms thereof were evaluated, negotiated and recommended, as applicable to each of RMRM's and TRMT's board of trustees by special committees of each of RMRM's and TRMT's board of trustees, respectively, each comprised solely of RMRM's and TRMT's disinterested, independent trustees, respectively, and were separately unanimously approved and adopted by RMRM's and TRMT's independent trustees and by RMRM's and TRMT's board of trustees, with independent trustees unanimously approving the merger and other transactions contemplated by the merger agreement.

The merger is expected to close during the third quarter of 2021, subject to the requisite approvals by RMRM and TRMT shareholders and other customary closing conditions. RMRM's greater than 5% shareholder has agreed to vote in favor of the issuance of common shares in the merger at RMRM's special meeting of shareholders. TRMT's greater than 5% shareholder has agreed to vote in favor of the merger and other transactions contemplated by the merger agreement at TRMT's special meeting of shareholders.

UBS Investment Bank is acting as exclusive financial adviser to the RMRM special committee and Skadden, Arps, Slate, Meagher & Flom LLP is acting as legal advisor to RMRM (acting through the special committee). Citigroup Global Markets Inc. is acting as exclusive financial adviser to the TRMT special committee and Sullivan & Worcester LLP is acting as legal adviser to TRMT (acting through the special committee).

## The Proxy Statement Contains Material Misstatements and Omissions

23.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Tremont's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

24.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's, RMRM's and the pro forma company's financial projections relied upon by Citi in connection with its fairness opinion; (ii) the data and inputs underlying the financial valuation analyses performed by Citi; and (iii) the background of the Proposed Transaction. Accordingly, Tremont stockholders are being asked to vote in favor of the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Tremont's, RMRM's, and the Pro Forma Company's Financial Projections***

25.     The Proxy Statement fails to disclose material information concerning the financial projections for Tremont, RMRM and the pro forma company relied upon by Citi for its financial analyses.

26.     For example, the Proxy Statement sets forth that in connection with its *Dividend Discount Analyses* for each of Tremont and RMRM, Citi utilized the dividends that each of Tremont and RMRM were forecasted to pay during the calendar years ending December 3, 2021

through December 31, 2025.  *See* Proxy Statement at 126.  In addition, the Proxy Statement sets forth that Citi observed the illustrative theoretical value uplift for Tremont common stockholders by utilizing a "dividend discount analysis of the combined company."  *Id.* at 129.  The Proxy Statement, however, fails to disclose: (i) the dividends that each of Tremont and RMRM were forecasted to pay during the calendar years ending December 3, 2021 through December 31, 2025; and (ii) the projected dividends for the combined company, to the extent utilized in Citi's dividend discount analyses of the combined company.

27.    Additionally, in connection with rendering its fairness opinion, Citi relied upon, "potential cost savings, strategic implications and financial and operational benefits (including the amount, timing and achievability thereof) anticipated by such managements to result from the Merger[.]"  *Id.* at 122.  Yet, the Proxy Statement fails to disclose the cost savings, strategic implications and financial and operational benefits that Tremont, RMRM and TRA management expect to result from the Proposed Transaction, including the assumptions underlying the expected synergies.

28.    Moreover, the Proxy Statement sets forth that on March 11, 2021:

> TRA provided a revised forecast for TRMT to UBS, Citi, Skadden and Sullivan, and on March 12, 2021, TRA provided a revised forecast for RMRM to UBS, Citi, Skadden and Sullivan, in each case reflecting an extension of the respective models through 2025, updates to applicable borrower interest rates and interest rates on borrowings under existing repurchase facilities, as well as certain inflation adjustments.

*Id.* at 94.  Then on March 16, 2021, "TRA provided updated five year forecasts and updated loan balances for each of RMRM and TRMT to UBS, Citi, Skadden and Sullivan."  *Id*. at 95.  On March 22, 2021:

> TRMT management, with the assistance of Citi, also reviewed and discussed with the TRMT special committee the five year financial projections for both TRMT and RMRM which TRA had prepared on behalf of each company, including the

assumptions used in the preparation of these projections, and certain financial information regarding selected public companies and selected precedent transactions involving mortgage REITs.

*Id.* at 95.  The Proxy Statement, however, fails to disclose: (i) the initial forecasts for Tremont and RMRM that TRA revised, as well as the subsequently revised forecasts that TRA provided to Tremont and RMRM on March 11 and March 12, respectively; (ii) the updated five-year forecasts and loan balances that TRA provided to Tremont and RMRM on March 16, 2021; (iii) the five-year financial projections for both Tremont and RMRM that Company management and the Special Committee reviewed on March 22, 2021; (iv) the assumptions underlying each set of revised forecasts; and (v) when the forecasts were finalized and provided to Citi for use in connection with its fairness opinion.

29.     The omission of this information renders the statements in the "Certain Prospective Financial Information of TRMT," "Certain Prospective Financial Information of RMRM," and "Opinion of Financial Advisor to the TRMT Special Committee" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Citi's Financial Analyses***

30.     The Proxy Statement fails to disclose material information concerning Citi's financial analyses.

31.     The Proxy Statement describes Citi's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Citi's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Tremont's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Citi's fairness opinion in determining whether to vote in favor of the Proposed Transaction.  This omitted

information, if disclosed, would significantly alter the total mix of information available to Tremont's stockholders.

32.     With respect to Citi's *Dividend Discount Analyses* of Tremont, the Proxy Statement fails to disclose: (i) the dividends that Tremont was forecasted to pay during the calendar years ending December 31, 2021 through December 31, 2025; (ii) Tremont's calendar year 2025 estimated book value of equity used to derive the terminal value; (iii) quantification of the terminal values for the Company; and (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 22.2% to 30.0%.

33.     With respect to Citi's *Dividend Discount Analyses* of RMRM, the Proxy Statement fails to disclose: (i) the dividends that RMRM was forecasted to pay during the calendar years ending December 31, 2021 through December 31, 2025; (ii) RMRM's calendar year 2025 estimated book value of equity used to derive the terminal value; (iii) quantification of the terminal values for RMRM; and (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 17.7% to 25.4%.

34.     With respect to Citi's *Selected Public Companies Analyses* and *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies and transactions observed, respectively.

35.     With respect to Citi's analysis of the illustrative potential pro forma financial effect of the merger on Tremont, the Proxy Statement fails to disclose quantification of (i) the potential cost savings anticipated by the managements of Tremont, RMRM and TRA to result from the Proposed Transaction; (ii) the accretion to Tremont's calendar year 2022 estimated distributable earnings per share; and (iii) the dilution to Tremont's book value per share ("BVPS") as of December 31, 2020.

36.     With respect to Citi's illustrative theoretical value uplift analyses, the Proxy Statement fails to disclose: (i) the potential dividends that the pro forma company is expected to generate, utilized in the dividend discount analysis of the combined company; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 17.7% to 25.4%; (iii) the potential cost savings anticipated by the managements of Tremont, RMRM and TRA to result from the Proposed Transaction utilized in the analysis; and (iv) BVPS as of December 31, 2020 of the combined company.

37.     The omission of this information renders the statements in the "Opinion of Financial Advisor to the TRMT Special Committee," "Certain Prospective Financial Information of TRMT," and "Certain Prospective Financial Information of RMRM" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

38.     The Proxy Statement fails to disclose material information concerning the background leading to the Proposed Transaction.

39.     The Proxy Statement sets forth that:

> On May 11, 2021, TRMT management received and forwarded to the TRMT board of trustees a letter from an unaffiliated third party inquiring about a potential transaction involving that party and TRMT. On May 17, 2021, a joint meeting of the TRMT special committee and TRMT board of trustees, with TRMT management, Citi, Sullivan and Saul Ewing participating, was held via teleconference to review and consider the letter. At the conclusion of that meeting, it was the consensus of the TRMT special committee and the TRMT board of trustees, separately, that the TRMT board of trustees would not engage with the third party at that time. Following that meeting, at the direction of the TRMT board of trustees, TRMT management sent a written response to the third party letter which stated that the TRMT board of trustees determined not to engage with that party at that time.

*Id*. at 105.  The Proxy Statement, however, fails to disclose: (i) whether the third party included terms for a potential transaction and if so, the terms proposed; and (ii) whether the third party has

contacted the Company regarding a potential transaction since the Board determined not to engage with the third party.

40.     The omission of this information renders the statements in the "Background of the Merger and the Other Transactions" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act

41.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Tremont will be unable to make a sufficiently informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

#### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

42.     Plaintiff repeats all previous allegations as if set forth in full.

43.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

44.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented

and/or omitted material facts, including material information about the Company's, RMRM's and the pro forma company's financial projections, the data and inputs underlying the financial valuation analyses performed by Citi, and the background of the Proposed Transaction. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

45.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

46.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

47.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations
### of Section 20(a) of the Exchange Act

48.     Plaintiff repeats all previous allegations as if set forth in full.

49.     The Individual Defendants acted as controlling persons of Tremont within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Tremont, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

52.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Tremont stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Tremont, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Tremont stockholders;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  September 3, 2021                          **WEISSLAW LLP**

                                                   By _____
                                                      Richard A. Acocelli
                                                      1500 Broadway, 16th Floor
                                                      New York, New York 10036
                                                      Tel: (212) 682-3025
                                                      Fax: (212) 682-3010
                                                      Email: racocelli@weisslawllp.com

                                                      *Attorneys for Plaintiff*